UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **GRADY L. WELCH,** | ) |
| **Plaintiff,** | ) |
| vs. | ) |
| | ) CASE NO. 2:13-CV-1169-SLB |
| **TIME WELL SPENT EXPRESS LLC** | ) |
| **d/b/a TWS EXPRESS; WILLIE** | ) |
| **JAMES CRAWFORD II,** | ) |
| **Defendants.** | ) |

## MEMORANDUM OPINION

Following the Entry of Default against defendants, Time Well Spent Express [TWS] and Willie James Crawford, II, (doc. 6),[1] the court allowed plaintiff, Grady L. Welch, the opportunity to submit evidence supporting his claim for damages; the court also held a hearing on damages, at which Welch testified. Based on the Complaint, plaintiff's submissions, his hearing testimony, and the relevant law, the court finds Welch is entitled to recover damages in the amount of $123,886.31 from defendants Crawford and TWS.

### I. DEFAULT JUDGMENT STANDARDS

Defendants' default is deemed their "admission of the facts cited in the Complaint, which [facts] by themselves may or may not be sufficient to establish a defendant's liability." *Pennsylvania Nat. Mut. Cas. Ins. Co. v. Edmonds*, Civil Action No. 09-0089-WS-B, 2010

---

[1]Reference to a document number, ["Doc. ___"], refers to the number assigned to each document as it is filed in the court's record.

WL 761332, *3 (S.D. Ala. Mar. 3, 2010)(internal quotations and citations omitted). "Stated differently, a default judgment cannot stand on a complaint that fails to state a claim." *Id*. (quoting *Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1370 n.41 (11th Cir. 1997))(internal quotations omitted). "The law is quite clear that a plaintiff seeking a default judgment is confined to the specific factual allegations and demands delineated in the Complaint. A default judgment does not give the plaintiff a blank check to recover from the defaulting defendant any losses it had ever suffered from whatever source. Rather, recovery is limited to the kind and amounts of losses set forth in the pleadings." *Id*. at *6 (internal quotations and citations omitted).

Therefore, "a plaintiff seeking default judgment must show the Court what [his] damages are, how they are calculated, and where they come from." *Patterson v. Walden*, Civil Action No. 13-0109-WS-B, 2014 WL 852410, *4 (S.D. Ala. Mar. 5, 2014)(quoting PNCEF, LLC v. Hendricks Bldg. Supply LLC, 740 F. Supp. 2d 1287, 1294 (S.D. Ala. 2010)). This court may not award damages without an evidentiary hearing or "demonstration by detailed affidavits establishing the necessary facts." *Adolph Coors Co. v. Movement Against Racism and the Klan*, 777 F.2d 1538, 1543-44 (11th Cir. 1985)(quoting United Artists Corp. v. Freeman, 605 F.2d 854, 857 (5th Cir. 1979)). "Even in the default judgment context, '[a] court has an obligation to assure that there is a legitimate basis for any damage award it enters.'" *Chartis Aerospace Ins. Services, Inc. v. AUA, Inc.*, No. 2:12-CV-

1087-JHH, 2013 WL 2249095, *6 (N.D. Ala. May 21, 2013)(quoting *Anheuser Busch, Inc.*

*v. Philpot*, 317 F.3d 1264, 1266 (11th Cir. 2003), other citations omitted).

## II.  STATEMENT OF FACTS

In his Complaint, plaintiff, Grady L. Welch, alleges the following facts:

6.  In the early morning hours on January 12, 2012, Plaintiff Grady L. Welch was traveling North on U.S. Interstate 65 in Shelby County, Alabama[,] driving a tractor and tanker-trailer for Quality Carriers, Inc.[,] when he experienced a blowout of one of the rear exterior passenger[-]side tires on his tanker-trailer.

7.  Mr. Welch pulled over to the right side of the interstate and into the emergency lane/shoulder where he parked his vehicle near mile marker 236.

8.  Mr. Welch turned on all of the flashers on his vehicle and then exited his vehicle to place reflective triangles around his vehicle running from the rear of the tanker-trailer toward the front of his vehicle in accordance with the applicable policies and procedures governing such roadside situations for commercial drivers.

. . .

10.  After determining that he could not repair the blown[-]out tire on his tanker-trailer by himself, Mr. Welch contacted Quality Carriers, Inc.[,] dispatch to request roadside assistance to repair the blown out tire so he could continue his delivery route.  Quality Carriers, Inc.[,] dispatch informed Mr. Welch that it was sending a mechanic to his location to help him repair the blown[-]out tire and instructed Mr. Welch to wait for the mechanic to arrive. Mr. Welch got back into the tractor cab of his vehicle and sat in the driver's seat waiting for the mechanic to arrive.

11.  Mr. Welch had locked down the wheels and had set/engaged the brakes on his vehicle as his vehicle and tanker-trailer sat in the emergency lane/shoulder on the right side of the interstate.

12.  While Mr. Welch was waiting for the mechanic to arrive . . . in the cab of his tractor . . . with all of his flashers on and the reflective triangles properly placed around his vehicle, Defendant Willie James Crawford, II[,] .

3

. . was driving a tractor and semi-trailer heading North on U.S. Interstate 65 in Shelby County, Alabama, just South of Mr. Welch's location.

13. Defendant Crawford was driving a commercial delivery route for Defendant Time Well Spent Express, LLC d/b/a TWS Express . . . at [that] time . . . .

14. At all times relevant to this Complaint, Defendant Crawford was an agent, employee, servant, representative, and/or affiliate of Defendant TWS Express and was acting and/or operating within the line and scope of said agency, employment, servitude, representation, and/or affiliation on the morning of January 12, 2012.

15. At all times relevant to this Complaint, Defendant Crawford had traveling with him in the TWS Express vehicle four (4) passengers: a twenty-two (22) year-old woman; a two and one-half (2 and ½) year-old boy; a one (1) year-old girl; and a three (3) month-old girl.

16. As Defendant Crawford and the TWS Express vehicle approached Mr. Welch and the Quality Carriers vehicle from the South on U.S. Interstate 65, Defendant Crawford fell asleep, and the TWS Express vehicle drifted into the emergency lane/shoulder on the right side of the interstate where Mr. Welch and the Quality Carriers vehicle were parked . . . .

17. Shortly before 6:00 a.m. on January 12, 2012, Defendant Crawford and the TWS Express tractor and semi-trailer struck and collided with the rear of the Quality Carriers tanker-trailer . . . .

18. The impact and collision also severely injured Mr. Welch's neck, back, shoulders, hips, legs, and other parts of his body to such an extent that he has not been able to work as a commercial driver/hauler since the date of the accident and is limited to light[-]duty office work.

19. Upon information and belief, when Defendant Crawford and the TWS Express vehicle struck Mr. Welch and the Quality Carriers vehicle, Defendant Crawford and the TWS Express vehicle were traveling approximately 65 to 70 miles-per-hour, with no evidence of speed reduction or application of brakes on the TWS Express vehicle prior to impact.

20. Despite the fact that Mr. Welch had locked down the wheels and had set/engaged the brakes on his vehicle, the collision and impact propelled

>   the Quality Carriers tractor and tanker-trailer, with Mr. Welch trapped inside the tractor cab, approximately 30 to 40 feet forward.

(Doc. 1 ¶¶ 6-20.) Crawford and TWS are deemed to have admitted these facts by virtue of their default. *See Nishimatsu Const. Co., Ltd. v. Houston Nat. Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975),[2] cited in *Cotton v. Massachusetts Mut. Life Ins. Co.*, 402 F.3d 1267, 1278 (11th Cir. 2005).

Welch alleges claims of negligence, wantonness, and/or recklessness against Crawford and vicarious liability against TWS with regard to the motor vehicle accident. (Doc. 1 ¶¶ 22-25.) He also alleges negligent and/or wanton hiring, supervision, retention, and /or entrustment against TWS. (*Id*. ¶¶ 27-31.) Welch seeks compensatory damages, including pain and suffering, as well as punitive damages against defendants. (*See* doc. 17.) He filed a Summary of Damages, in which he claims the following:

>   (1) Trover Solutions, Inc.[,] Worker's Compensation Subrogation Lien (as of August 5, 2014):  Medical – $43,888.35; Wages – $47,842.23;
>
>   (2) Blue Cross Blue Shield Worker's Compensation Subrogation Lien (as of July 17, 2014):  Medical – $60.73;
>
>   (3) MedChex:  Medical Subrogation Lien (as of December 5, 2013): [Medical –] $2,095.00;
>
>   (4) [L]ost wages and earning capacity in an amount ranging from $468,700 to $688,000;
>
>   (5) Pain and suffering, mental anguish, and emotional distress;

---

[2]Decisions of the former Fifth Circuit Court of Appeals rendered prior to October 1, 1981, constitute binding precedent in the Eleventh Circuit. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981)(en banc).

      (6) Punitive damages in an amount to be determined in the Court's discretion to the Defendants for their wrongful conduct and to deter similar individuals and entities from committing the same or similar wrongful acts.

(Id.) He filed evidence of medical treatment and worker's compensation payments following the accident, as well as the Affidavit of John W. McKinney, III, in support of his claim for lost future wages and earning capacity, the Affidavit of John Dory Curtis, M.D., a treating physician, and the decision of the Commissioner of Social Security, finding Welch disabled. (*See generally* docs. 14, 19-22, 24-3, and 24-4.) He also testified in open court. The court has reviewed all of the evidence submitted by Welch.

### III.  LIABILITY

This court has jurisdiction over this case based on diversity of citizenship among the parties. *See* 28 U.S.C. § 1332(a)(1)("The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between – (1) citizens of different States . . . ."). Plaintiff is a citizen of Alabama; defendants are alleged to be citizens of Georgia. (Doc. 1 ¶¶ 1-3.)

"[A] federal court in a diversity case is required to apply the laws, including principles of conflict of laws, of the state in which the federal court sits." *Manuel v. Convergys Corp.*, 430 F.3d 1132, 1139 (11th Cir. 2005) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941)); *see Erie R. Co. v. Tompkins,* 304 U.S. 64, 78 (1938)("Except in matters governed by the Federal Constitution or by acts of Congress, the law to be applied in any

case is the law of the state."). This court, sitting in Alabama, "must apply Alabama's choice-of-law rules." *Dowdy v. Suzuki Motor Corp.*, 567 Fed. Appx. 890, 892 (11th Cir. 2014)(citing *Manuel*, 430 F.3d at 1139).

"The choice-of-law rule traditionally applied by Alabama in tort cases is *lex loci delicti*." *Bryant v. Cruises, Inc.*, 6 F. Supp. 2d 1314, 1317 (N.D. Ala. 1998). "*Lex loci delicti* has been the rule in Alabama for almost 100 years. Under this principle, an Alabama court will determine the substantive rights of an injured party according to the law of the state where the injury occurred." *Etheredge v. Genie Indus., Inc.*, 632 So. 2d 1324, 1325 (Ala. 1994)(quoting *Fitts v. Minnesota Mining & Manufacturing Co.*, 581 So. 2d 819, 820 (Ala. 1991)). The motor-vehicle accident that forms the basis of Welch's claims occurred in Alabama. (Doc. ¶¶ 6, 17.) Therefore, this court will apply Alabama law to determine whether the allegations in the Complaint support the causes of action Welch has alleged.

## A. COUNT ONE – NEGLIGENCE/WANTONNESS/RECKLESSNESS

### 1. Negligence

As set forth above, Welch alleges that Crawford struck the rear end of his tanker when he fell asleep while driving. In Alabama, "In order to establish a negligence claim, a plaintiff must prove: '(1) a duty to a foreseeable plaintiff; (2) a breach of that duty; (3) proximate causation; and (4) damage or injury.'" *Miller v. Cleckler*, 51 So. 3d 379, 383 (Ala. Civ. App. 2010)(quoting *S.B. v. Saint James Sch.,* 959 So. 2d 72, 97 (Ala. 2006)(quoting *Martin v. Arnold,* 643 So. 2d 564, 567 (Ala. 1994)). "[A] vehicle operator is under a duty to use reasonable care in operating the vehicle." *Jones v. Baltazar*, 658 So. 2d 420, 421 (Ala.

1995). "Going to sleep while driving is evidence of negligence." *Alexander ex rel. Estate of Alexander v. Annas*, Civ. Action No. 06-0106-CB-B, 2007 WL 625905, *2 (S.D. Ala. Feb. 26, 2007)(citing *Whiddon v. Malone*, 220 Ala. 220, 124 So. 516 (1929)).

The court finds the allegations of Welch's Complaint adequately state a cause of action against Crawford for negligence.

**2. Wantonness**

As set forth above, Welch alleges the cause of the accident was Crawford's falling asleep while driving.[3]  The Alabama Court of Civil Appeals has set forth Alabama's law regarding the issue of wantonness under such circumstances:

> In *Lankford v. Mong*, 283 Ala. 24, 214 So. 2d 301 (1968), . . . our supreme court reiterated the standard for determining the issue of alleged wantonness:
>
>> "Wantonness is the conscious doing of some act or omission of some duty under knowledge of the existing conditions and conscious that from the doing of such act or omission of such duty injury will likely or probably result. Before a party can be said to be guilty of wanton conduct, it must be shown that with reckless indifference to the consequences he consciously and intentionally did some wrongful act or omitted some known duty which produced the injury."
>
> *Lankford*, 283 Ala. at 26, 214 So. 2d at 302.  The court in *Lankford* articulated for the first time in Alabama the elements of wanton misconduct in a situation where a driver is accused of falling asleep at the wheel, quoting with approval the following language from 28 A.L.R.2d:

---

[3]Welch alleges that Crawford had four passengers traveling with him.  (Doc. 1 ¶ 15.)  He does not allege that the presence of the four passengers caused the accident.  He alleges that Crawford fell asleep and his vehicle drifted into the emergency lane where it struck Welch's vehicle.  (*Id.* ¶ 16.)

> "'A driver of an automobile is not guilty of wanton or wilful misconduct in falling asleep while driving unless it appears that he continued to drive in reckless disregard of premonitory symptoms.'"
>
> *Lankford*, 283 Ala. at 26-27, 214 So. 2d at 303 (quoting 28 A.L.R.2d 72).
>
> This standard for wantonness has been held to apply also in cases of diminished alertness, where a driver is alleged to have had a "consciousness or awareness of sleepiness, tiredness, and fatigue but continued to drive with reckless indifference to the consequences." *Tew v. Jones*, 417 So. 2d 146 (Ala.1982). Thus, the requisite knowledge for the imposition of liability in such cases is "a realization of the 'premonitory symptoms' of sleep." *Id*. at 147.

*Roszell v. Martin*, 591 So. 2d 511, 513 (Ala. Civ. App. 1991).

Welch's Complaint contains no allegations that Crawford continued to drive after he became aware he was sleepy, tired, or fatigued. Therefore, the court finds that the Complaint does not allege a cause of action based on wanton and/or reckless conduct.

### 3. Vicarious Liability

"Under [the] doctrine [of respondeat superior], a master shall be civilly liable for the tortious acts of his servant." *Ware v. Timmons*, 954 So. 2d 545, 549 (Ala. 2006)(quoting *Philadelphia & Reading R.R. v. Derby,* 55 U.S. (14 How.) 468, 486 (1852))(internal quotations omitted). "The vicarious liability of a putative master under the rule of respondeat superior depends upon the liability of the putative servant." *Wheeler v. George*, 39 So. 3d 1061, 1090 (Ala. 2009)(quoting *Hollis v. City of Brighton*, 885 So. 2d 135, 141-42 (Ala. 2004)(citing *Larry Terry Contractors, Inc. v. Bogle*, 404 So. 2d 613, 614 (Ala.1981))).

Because the court finds that Welch's Complaint does not allege a wantonness claim against Crawford, such a claim asserted against TWS as Crawford's employer is due to be

dismissed. The court finds the facts alleged in the Complaint are sufficient to support Welch's claim against TWS based on Crawford's negligence while driving as the agent or employee of TWS.

**B.  COUNT TWO – NEGLIGENT/WANTON HIRING, TRAINING, SUPERVISION, RETENTION, AND ENTRUSTMENT**

In addition to alleging that Crawford negligently caused the accident at issue when he fell asleep while driving, Welch alleges (1) TWS "negligently and/or wantonly hired, trained, supervised, and/or retained Defendant Crawford as a driver, employee, agent, servant, representative, and/or affiliate, and negligently and/or wantonly hired, trained, supervised, and/or retained the services of Defendant Crawford as operator of Defendant TWS Express' vehicle involved in the subject collision," (2) it "negligently and/or wantonly entrusted Defendant Crawford with the use of a tractor and semi-trailer," and (3) it "knew or should have known of the incompetency and/or unfitness of Defendant Crawford with regard to operation of the subject TWS Express tractor and semi-trailer." (Doc. 1 ¶¶ 27-29.)

> The Alabama Supreme Court recognizes the torts of negligent/wanton entrustment, negligent/wanton hiring, negligent/wanton supervision, and negligent/wanton training. *See Southland Bank v. A & A Drywall Supply Co., Inc.,* [21 So. 3d 1196, 1214-1217] (Ala. 2008)(negligent training), *Armstrong Bus. Servs. v. AmSouth Bank,* 817 So. 2d 665, 682 (Ala. 2001) (negligent/wanton supervision); *CP & B Enters., Inc. v. Mellert,* 762 So. 2d 356 (Ala. 2000)(negligent/wanton hiring); *Bruck v. Jim Walter Corp.,* 470 So. 2d 1141, 1144 (Ala. 1985)(negligent/wanton entrustment).
>
> . . .
>
> The torts at issue have common elements. Namely, to prove a claim under Alabama law for any of [these torts], a plaintiff must demonstrate that the employer knew, or in the exercise of ordinary care should have known, that

>  its employee was incompetent. *See Southland Bank,* [21 So. 3d at 1214-17] (negligent training); *Armstrong Bus. Servs.,* 817 So. 2d at 682 (negligent/wanton supervision); *Bruck,* 470 So. 2d at 1144 (negligent/wanton entrustment); *Sanders v. Shoe Show, Inc.,* 778 So. 2d 820, 824 (Ala. Civ. App.2000) (negligent/wanton hiring).

*Wright v. McKenzie*, 647 F. Supp. 2d 1293, 1297 (M.D. Ala. 2009). In order to properly allege a cause of action for negligent or wanton failure to train, supervise, retain, hire, and/or negligent or wanton entrustment, Welch must allege that Crawford caused his injuries because he was incompetent and that TWS knew or should have known of Crawford's incompetency. *Southland Bank*, 21 So. 3d at 1215. "A mistake or single act of negligence on the part of an employee does not establish incompetency: 'Negligence is not synonymous with incompetency. The most competent may be negligent. *But one who is habitually negligent may on that account be incompetent*.'" *Id*. at 1216 (quoting *Pritchett v. ICN Med. Alliance, Inc.*, 938 So. 2d 933, 941 (Ala. 2006))(emphasis in original; internal citations omitted). "Under Alabama law, the heart of the competency issue is whether the Plaintiff's evidence bears on [the employee/defendant's] 'ability (or inability) to properly drive a vehicle.'" *Wright*, 647 F. Supp. 2d at 1299 (quoting *Halford v. Alamo Rent-A-Car*, 921 So. 2d 409, 413-14 (Ala. 2005)).

In this case, Welch has alleged no facts to indicate that Crawford was incompetent to drive and that TWS knew or should have known about the incompetency before the motor-vehicle accident that injured Welch. In this case, Welch has not alleged that Crawford had a history of accidents or that Crawford was otherwise incompetent to drive. The instant accident – which occurred *after* TWS hired Crawford, trained him, supervised him, retained

Case 2:13-cv-01169-SLB Document 28 Filed 09/29/16 Page 12 of 20

him, and entrusted him with its vehicle – "would not reasonably allow the inference by a jury of a want of ability suitable to the task, either as regards natural qualities or experience, or deficiency of disposition to use one's abilities and experience properly or the converse of reliability, or repeated acts of carelessness and incompetency." *Southland Bank*, 21 So. 3d at 1217 (internal quotations omitted). "[A]t best [the accident] shows a mistake or single act of negligence, or that [Crawford negligently caused the accident]," *id*.; it does not show that Crawford was unable to properly drive due to habitual negligence.

The court finds that the Complaint does not allege a cause of action for negligent or wanton hiring, training, supervision, retention, and entrustment. Therefore, these claims against TWS will be dismissed.

## IV. **DAMAGES**

### A. PUNITIVE DAMAGES

Pursuant to Alabama law, "Punitive damages may not be awarded in any civil action, except civil actions for wrongful death . . . , other than in a tort action where it is proven by clear and convincing evidence that the defendant consciously or deliberately engaged in oppression, fraud, wantonness, or malice with regard to the plaintiff." Ala. Code. § 6-11-20(a). Because the court finds Welch's wantonness claims are due to be dismissed, it necessarily finds no basis for awarding punitive damages.

### B. SUBROGATION CLAIMS

Welch claims the following damages:

(1)  Trover Solutions, Inc. Worker's Compensation Subrogation Lien (as of August 5, 2014):  Medical - $43,888.35; Wages - $47,842.23 [total of $91,730.58];[4]

(2)  Blue Cross Blue Shield Worker's Compensation Subrogation Lien (as of July 17, 2014):  Medical - $60.73;

(3)  MedChex: Medical Subrogation Lien (as of December 5, 2013):  $2,095.00;

(Doc. 17 [footnote added].)  The record contains sufficient evidence to establish (1) Welch received medical treatment and wages at the expense of his employer's workers' compensation carrier, his insurer, and medical-services providers, and (2) these entities have asserted subrogation liens against Welch, (*see* docs. 14-1 to 14-4), although none of these entities have sought to intervene in the instant action.  The court has reviewed the evidence submitted by Welch and finds this evidence sufficient to establish that these amounts were paid as a result of the accident made the basis of this lawsuit and, therefore, are a proper measure of compensatory damages.  *See Edwards v. Allied Home Mortgage Capital Corp.*, 962 So. 2d 194, 206 (Ala. 2007)("Compensatory damages are intended to reimburse a

---

[4]Trover's Case Statement for Indemnity/Lost Wages, setting forth the medical expenses paid as part of Welch's worker's compensation claim, includes claims for amounts for which the payee is "Welch, Grady."  (*See* doc. 14-1 at 6-7, 9-11.)  In a footnote, Trover states, "If an insured's deductible or out-of-pocket expenses are listed, we are requesting payment as a courtesy to our client's insured." (*Id*. at 12.)  Of the amount listed on the Case Statement as medical expenses, $43,888.35, Welch is listed as the "payee" for $6,217.91.  These amounts would not be payable to Trover pursuant to their lien.  Rather, to the extent actually recovered from defendants, $6,217.91 would be payable to Welch as compensatory damages.

claimant only for the loss suffered by reason of its injury.")(citing *Torsch v. McLeod*, 665 So. 2d 934, 940 (Ala.1995)).

Therefore, the court awards Welch **NINETY-THREE THOUSAND EIGHT HUNDRED EIGHTY-SIX AND 31/100 DOLLARS ($93,886.31)**, as lost wages and medical expenses.

## C. PAIN AND SUFFERING, MENTAL ANGUISH, AND EMOTIONAL DISTRESS

Welch submitted the affidavit of John Dory Curtis, M.D. to support his claim for damages. Dr. Curtis testified, "I am also a treating physician of Grady L. Welch, who is and has been a patient of mine. I have examined, diagnosed, and treated Welch multiple times since January 12, 2012[,] for signs, symptoms, and injuries that manifested themselves in Welch after he was involved in a work-related motor vehicle accident on or about January 12, 2012." (Doc. 19-1 ¶ 2.) According to medical records submitted by Welch, Dr. Curtis saw him on two occasions, July 26, 2013, and August 23, 2013. (Doc. 24-3 at 3, 12, 15, 42.) In his Affidavit, Dr. Curtis opined:

> 6. Having reviewed [Welch's] medical information and those materials included in Exhibit "B,"[5] having personally examined, observed, diagnosed, and treated Welch myself, and applying my education, skill, training, and many years of experience as an orthopedic surgeon regularly practicing in the State of Alabama and providing hands-on patient care to patients like Welch, it is my medical opinion, within a reasonable degree of medical certainty, that the signs, symptoms, injuries, pain, and medical expenses experienced and incurred by Welch subsequent to January 12, 2012, including those outlined in the Complaint filed in Welch's lawsuit, were caused by and were the result

---

[5]Exhibit B to Dr. Curtis's Affidavit is found in the court's record at docs. 20 to 22.

14

>  of Welch's involvement in the subject motor vehicle collision that occurred on January 12, 2012.
>
>  7. It is also my professional opinion that the medical services, care, and treatment provided to and received by Welch since the subject motor vehicle accident on January 12, 2012 and the resulting subrogation liens, medical expenses, medical bills, invoices, and other expenses related to Welch's receipt of said medical services, care, and treatment were reasonable and necessary under the circumstances, given Welch's signs, symptoms, injuries, pain, and health condition subsequent to the subject motor vehicle accident.

(Doc. 19-1 ¶¶ 6-7 [footnote added].) The court finds this testimony to lack the detail necessary to persuasively establish the extent of Welch's injuries suffered as a result of the motor-vehicle accident. However, the court finds Dr. Curtis's treatment note from August 23, 2013, one of only two office visits, supports an inference that Dr. Curtis did not fully credit Welch's complaints of pain. Dr. Curtis noted:

>  — all studies show few problems
>  — mild L5-S1 stenosis (foraminal)
>  — no nerve root impingement in neck/thoracic or lumbar
>
>  — Assessment – *pain far out of proportion to findings*
>
>  —  Rec[ommendation] – finish series of block[s]
>       • if no improvement needs to see a spine surgeon – but doubt any intervention needed.
>
>  *No need to see me again*.

(Doc. 24-3 at 70.)

Dr. Curtis's finding that Welch's complaints of pain were not supported by medical findings on examination is echoed in other medical evaluations. On February 20, 2012, Roger T. Boyington, D.O., noted, "Decreased grip strength right upper extremity[;]

15

however[,] I am suspicious of malingering due to observed effort and patient being [right] hand dominant.  When asked if he could squeeze harder he said no but actually did squeeze some harder." (Doc. 14-10 at 4.)  A couple of weeks later, Welch was examined by Fleming Brooks, M.D., who noted, "It is very difficult to examine [Welch].  He cries out in pain anytime his neck is moved.  He has pain to light touch and pain to tapping on top of the shoulders and when I tap him on top of the head lightly he cries out in pain." (*Id*. at 22.)  He found Welch had "multiple positive Waddell's signs,"[6] (*id*. at 23), which are indicative of

---

[6]*See also Davis v. ReliaStar Life Ins. Co.*, 665 F. Supp. 2d 1369, 1377 n.16 (N.D. Ga. 2009):

There are eight Waddell signs:

1.  Superficial skin tenderness.  Physical causes for back pain do not produce skin pain or tenderness (pain with light touch).

2.  Non-anatomic pain.  Physical conditions that cause pain affect specific involved structures and do not cross boundaries beyond those structures.  When the distribution of the pain crosses anatomical boundaries into regions of structures that are not affected, the pain cannot have a physical cause.

3.  Simulation of spine loading (axial loading).  While the patient is standing, downward pressure on the top of the head cannot produce back pain due to physical factors.  Only functional back pain will increase . . . .

4.  Simulated rotation.  When the shoulders and pelvis are rotated together in a standing patient, there is no stress on the back.  Back pain from this maneuver is functional . . . .

5.  Distraction straight-leg raising.  Distraction tests are positive where the pain is not consistent between different versions of the same action.  If a straight-leg raising test produces back pain, the same pain should

16

malingering or a psychological condition, rather physical condition, is causing pain, *see Wick v. Barnhart*, 173 Fed. Appx. 597, 598 (9th Cir. 2006)("[T]he Waddell test does not . . . distinguish between malingering and psychological conditions." (citing Gordon Waddell, *et al.*, *Nonorganic Physical Signs in Low-Back Pain*, 5 Spine 117, 117-25 (Mar.-Apr.1980))).

After Dr. Curtis last saw Welch, Michael Davis, M.D., noted:

> At this point he is not getting any better. I do not see anything that warrants surgical intervention. I recommend that we can consider rheumatologic

---

> occur with the patient sitting and one knee extended straight out. Patients with purely functional pain are unaware of this and describe no pain while in a sitting knee-extended position . . . .
>
> 6. Regional sensory change. Numbness that does not follow anatomical nerve distributions . . . , cannot be due to nerve impingement. Such a non-anatomical pattern is sometimes called a "stocking" sensory loss, and is almost always due to functional complaints.
>
> 7. Regional weakness. Loss of muscle strength, like skin sensation, follows anatomical nerve distributions. Weakness in combinations of muscles that are not innervated by the same spinal nerve roots or peripheral nerves cannot be explained anatomically.
>
> 8. Over-reaction. Inappropriately large pain reactions to mild touching during physical examination also indicate to an experienced clinician that the patient's stated symptoms do not correspond to the effects expected from a physical abnormality.
>
> Tennenhouse, 2 ATTORNEY'S MEDICAL DESKBOOK § 18:4. The signs are "caused by non-anatomical (functional) factors and implies that the back pain has no physical cause." *Id.* The presence of one or two Waddell signs indicates that the patient may be anxious or eager to cooperate. *Id.* "Three or more are usually considered sufficient to make a diagnosis of functional disorder or deliberate deception (malingering) and to rule out physical abnormality."

> workup under his regular insurance because it is atypical for somebody to hurt going on for 2 years like he is. . . .
>
> . . . At this point with neck pain, thoracic back pain, lumbar spine pain, I do not think I have a solution to his problems, nor do I see anything that would warrant aggressive intervention. . . . I am going to place this patient at MMI [maximum medical improvement]. He has restrictions as per the functional capacity evaluation dated 01/22/2013. He has a 0% impairment.

(Doc. 14-11 at 3.)

To the extent Welch continues to experience back and neck pain, the court finds this pain is not caused by injuries he suffered as a result of the motor-vehicle accident made the basis of this lawsuit. Although the court accepts Welch's testimony that he suffered some pain in the weeks immediately following the accident, the court rejects his testimony that his continuing pain, allegedly experienced months and years after the accident, was "caused" by injuries he suffered in the accident. *See Sessions Co. v. Turner*, 493 So. 2d 1387, 1390 (Ala. 1986)("The general rule is that compensatory damages are intended only to reimburse one for the loss suffered by reason of an injury to person or property." (citing *Youngblood v. Bailey*, 459 So. 2d 855 (Ala.1984); *Matheny v. Petersen*, 276 Ala. 478, 163 So. 2d 635 (1964))).

Welch appeared before the court and testified as to his pain and suffering. The court finds Welch's testimony not entirely credible to the extent he testified that his continuing pain was caused by injuries suffered in the motor-vehicle accident. Although the court finds that, as a result of the motor vehicle accident made the basis of his complaint Welch suffered some pain, it will not award any damages for future pain. The court will award Welch

18

**THIRTY THOUSAND DOLLARS ($30,000)** for pain and suffering caused by the motor-vehicle accident.

## D. LOST FUTURE WAGES AND EARNING CAPACITY

Welch claims "lost wages and earning capacity in an amount ranging from $468,700 to $688,000." (Doc. 17.) The court declines to award any amount for future lost wages, diminished earning capacity, and/or future medical expenses as the court finds that this type of damages is not established by the evidence. Although plaintiff presented evidence that his continuing pain limits his ability to work, the court finds insufficient evidence to convince it that his continuing pain was caused by injuries suffered in the motor-vehicle accident.[7]

Based on the lack of objective evidence of a permanent injury caused by the accident and evidence of symptom magnification and/or a psychological component to Welch's continuing complaints of pain, the court finds that Welch's failure to return to work and his diminished capacity are not the result of injuries he sustained in the motor-vehicle accident. Therefore, the court declines to award any damages for future wages and/or diminished earning capacity.

---

[7]The court has considered the findings of the Social Security Administration that Welch is permanently disabled. (*See* doc. 24-4.) The issue before this court is limited to whether and to what extent Welch was injured in the motor-vehicle accident, *see Session Co.*, 493 So. 2d at 1390, and not whether Welch was injured and/or disabled due to medical conditions not caused by the accident. Given the lack of objective medical imaging and statements from his doctors regarding his symptoms, the court is not convinced that Welch's inability to work is the result of injuries sustained in the motor-vehicle accident.


## CONCLUSION

For the foregoing reasons, the court is of the opinion that Welch is entitled to a default judgment on his negligence claim against Crawford and TWS in the amount of **ONE HUNDRED TWENTY-THREE THOUSAND, EIGHT HUNDRED EIGHT-SIX AND 31/100 DOLLARS ($123,886.31)**, and his remaining claims are due to be dismissed. A separate Judgment will be entered contemporaneously with this Memorandum Opinion.

**DONE** this 29th day of September, 2016.

*Sharon Lovelace Blackburn*
_____
SHARON LOVELACE BLACKBURN
SENIOR UNITED STATES DISTRICT JUDGE